UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　　　-v.-<br><br>SURURI BARBEE,<br>　　　　　　　　　　　Defendant. | 20 Cr. 403 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

On the eve of his surrender to serve a 24-month sentence for violating his conditions of supervised release, Defendant Sururi Barbee filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In it, Mr. Barbee contends that he received ineffective assistance from his counsel during the violation of supervised release ("VOSR") proceedings, and seeks a new sentence. For the reasons set forth in the remainder of this Opinion, the Court denies Mr. Barbee's motion.

## BACKGROUND

### A.   The Underlying Case

Mr. Barbee was initially arrested in the United States District Court for the District of Vermont on April 21, 2011. (Docket, *United States* v. *Barbee*, No. 11 Cr. 47 (CR) (D. Vt.) ("Vt. Dkt.") #3-5). Later that day, he was charged in a criminal complaint with conspiracy to distribute mixtures and substances containing a detectable amount of heroin. (Vt. Dkt. #1). One month later, on May 19, 2011, Mr. Barbee was charged in a one-count indictment with conspiracy to distribute heroin and cocaine. (Vt. Dkt. #12). Superseding indictments adding co-defendants and charges, and extending the timeframe of

the conspiracy, were filed on November 17, 2011, and December 14, 2011 (Vt. Dkt. #24, 30), and a superseding information (the "Information") charging Mr. Barbee alone with firearms and narcotics offenses was filed on May 7, 2012 (Vt. Dkt. #55).

Mr. Barbee pleaded guilty to Counts One and Two of the Information on May 7, 2012, pursuant to a written plea agreement with the Government. (Vt. Dkt. #56). Sentencing was held before District Judge Christina Reiss on September 6, 2012. (Vt. Dkt. #92 (sentencing transcript)). During the proceedings, Mr. Barbee sought a downward departure under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), or a downward variance under 18 U.S.C. § 3553(a), for extraordinary rehabilitation and extraordinary family circumstances. (*Id.* at 4). As support for the latter request, Mr. Barbee offered testimony from his mother, Roxanne Jones, concerning her physical limitations and her reliance on Mr. Barbee as her caretaker. (*Id.* at 15-17).

After hearing extensive argument from the parties, Judge Reiss outlined Mr. Barbee's sentence. (Vt. Dkt. #92 at 44-55). She began by denying Mr. Barbee's motion for a downward departure for extraordinary circumstances, noting that he had failed to demonstrate that he was Ms. Jones's sole caregiver. (*Id.* at 44). However, Judge Reiss noted that she would consider Mr. Barbee's family circumstances under Section 3553(a). (*Id.* at 45). Similarly, Judge Reiss declined to downwardly depart for extraordinary rehabilitation, while agreeing to consider Mr. Barbee's "substantial rehabilitation" under Section 3553(a). (*Id.* at 46). Judge Reiss calculated the applicable Guidelines

2

range to be 117 to 131 months, reflecting a mandatory 60-month term on Count One and a range of 57 to 71 months on Count Two. (*Id.* at 48). After extensive discussion of Mr. Barbee's history and characteristics, Judge Reiss varied downwardly on Count Two to a term of 33 months, and imposed an aggregate term of imprisonment of 93 months. (*Id.* at 53-55; *see also* Vt. Dkt. #87 (judgment)). Mr. Barbee was released from custody to begin serving his three-year term of supervised release on or about June 26, 2019. (Dkt. #2).

**B.     The Transfer of Jurisdiction and the VOSR Proceedings**

A form requesting transfer of jurisdiction of Mr. Barbee's case to this District was filed on August 12, 2020. (Dkt. #1-2). On August 19, 2020, the Probation Office requested the issuance of a warrant for Mr. Barbee's arrest, based on two separate arrests by the New York City Police Department on July 19, 2020, for robbery and firearms offenses. (Violation Report). Thereafter, on August 28, 2020, Mr. Barbee was arrested and presented before the duty Magistrate Judge in this District, and released on bail conditions. (Dkt. #5-7). This Court held a remote arraignment proceeding on September 2, 2020. (Dkt. #8 (transcript)).

Because Mr. Barbee's VOSR proceedings were predicated on pending state court proceedings, the Court adjourned the matter several times at the request of the parties. (Dkt. #11, 14, 17, 19, 21). In the interim, on October 9, 2021, the Probation Office amended its violation report to reflect updated information about Mr. Barbee's employment and living situations, as well as additional violation specifications stemming from a July 18, 2021 arrest in

3

Westchester County for driving while intoxicated. (Amended Violation Report). On October 12, 2021, the Court held a pre-hearing conference at which Mr. Barbee was arraigned on the additional specifications. (Dkt. #22 (transcript)). Additional adjournments at the request of the parties then followed. (Dkt. #25, 27, 29, 33, 35).

On September 27, 2022, Mr. Barbee admitted to Specification #2 of the Amended Violation Report, which charged him with committing robbery in the first degree while displaying a firearm, in violation of New York Penal Law § 160.15(4). (Dkt. #40 (transcript)).[1] During his allocution, Mr. Barbee admitted as follows:

> I, Sururi Barbee on or about July 10, 2020, in New York County, while carrying what appeared to be a firearm, did forcibly remove property from another person. I knew that I was on supervised release and the above conduct violated my conditions of my supervised release.

(*Id.* at 20). At the defense's request, the Court scheduled sentencing in the matter for November 10, 2022. (*Id.* at 23; *see also* Dkt. #36, 39 (sentencing submissions)).

Sentencing took place on November 10, 2022. (Dkt. #57 (transcript)). The Government began its sentencing presentation by outlining the specifics of the robbery incident, explaining that Mr. Barbee had entered a cellphone store, forced the employee he encountered there to go to the back of the store where

---

[1] Counsel for the parties explained to the Court that while the robbery and firearms charges had been dismissed in state court, the parties had agreed that Mr. Barbee "would be admitting to [the robbery charge] here rather than in state court." (Dkt. #40 at 3).

4

another employee was present, and demanded that they open a safe so that he could take the cellphones stored there, all while threatening to shoot the employees. (*Id.* at 4-6). The Government also detailed Mr. Barbee's marked substance abuse problems while on supervised release, including two arrests for driving while intoxicated. (*Id.* at 6-7). The Court heard from Mr. Barbee's supervising probation officer, who outlined the seriousness of his substance abuse problem and the difficulties encountered by the counselors to whom Mr. Barbee had been referred. (*Id.* at 7-10). The officer also recounted several instances in which Mr. Barbee had tested positive for marijuana or excessive alcohol consumption when reporting to the Probation Office (*id.* at 10-11), and her difficulties in verifying Mr. Barbee's employment (*id.* at 12-14).

  The Court then heard from the defense. Defense counsel Xavier Donaldson remarked that his client "has been trying to deal with what I would call his inner demons … probably generational demons of alcoholism that's been troubling his family for quite some time." (Dkt. #57 at 14). He argued that Mr. Barbee's drinking problem explained his difficulties on supervised release, including his difficulty in securing and maintaining employment, and that his client was truly contrite about the robbery incident. (*Id.* at 15). While acknowledging that "some incarceration is necessary," Mr. Donaldson recommended 12 months and a significant term of community service, rather than the 24 months sought by the Government and the Probation Office. (*Id.* at 16-18). Mr. Barbee spoke as well, explaining the "emotional roller coaster"

5

that he had experienced since the robbery incident, and the struggles occasioned by his relapses. (*Id.* at 21-22).

The Court revoked Mr. Barbee's supervised release and imposed a term of 24 months imprisonment, with no term of supervised release to follow. It explained:

> Counsel for both sides have discussed this as a breach, and the breach in this case of the Court's trust is quite severe. In September of 2019, there was an incident that resulted in Mr. Barbee pleading to the offense of driving while ability impaired. And that should have been the wake-up call that he needed to understand that things were not going correctly.
>
> The issue is, though, that he continued living his life and didn't really address these issues, and engaged in much, much more serious conduct, which is that to which he has admitted here. And that robbery was devastating for him, of course, because it was such an unfortunate thing for him to do, but it was far more devastating for the two employees who were involved. They were just trying to do their jobs. They were traumatized as a result. The conduct is egregious in any setting but particularly so on supervised release.
>
> This then should have been a wake-up call, but it was not, because a year later, Mr. Barbee was arrested again, and though I understand those charges may be dismissed, putting himself in a position to be arrested was another factor that causes me concern. The idea of supervised release is, among other things, to give Mr. Barbee an opportunity to take advantage of various programs and various options, to decide how to reintegrate and re-enter society. And I could understand if Mr. Barbee had these problems because of the lack of opportunities that the probation office provided, but here, there were multiple opportunities given, and they weren't taken, or they weren't taken to their full degree. There were two different treatment providers that he's been placed in contact with, and we've discussed the results of those, and they are mixed. There are serious problems with employment.

6

> I'm not sure why he's been out of work for a year, although it is distressing to hear him blame the probation office for his inability to obtain work. There is continued substance abuse even on the eve of these proceedings. And all of those things cause me concern.
>
> I want Mr. Barbee to get back on track. I want him to figure out inside what those issues are that he wants to address and to address them. But he hasn't been able to do it in the past several years. In fact, he's sort of rebuffed the opportunities that were given to him by the probation office.
>
> And then there remains the conduct that he's admitted to.
>
> Based on all of these factors, considering the nature of both the underlying offense conduct and the conduct here, but, more than that, the issues of deterrence, protection of the public, and the severity of the breach of the Court's trust, I don't see a basis for a variance from the guidelines, and so I am imposing a term of 24 months' imprisonment.

(Dkt. #57 at 25-26; *see also* Dkt. #42 (judgment)).

The Court had initially permitted Mr. Barbee to surrender on January 4, 2023. (Dkt. #42). However, because of delays by the Bureau of Prisons ("BOP") in advising Mr. Barbee of his designated facility, the Court adjourned the surrender date by one month, until February 6, 2023. (Dkt. #43-46). The Court also accepted what would otherwise have been a late notice of appeal, which it received on January 12, 2023. (Dkt. #48 (notice of appeal); Dkt. #49 (endorsement accepting appeal)).

After it had extended Mr. Barbee's surrender date, the Court received several *pro se* submissions from Mr. Barbee suggesting a rupture in the attorney-client relationship with Mr. Donaldson. By Order dated January 31,

7

2023, the Court relieved Mr. Donaldson and appointed Sarah M. Sacks pursuant to the Criminal Justice Act. (Dkt. #50-51).[2] On February 1, 2023, Ms. Sacks requested an emergency conference with the Court (Dkt. #52), which conference was held the following day. After and as a result of the conference, the Court received briefing from the parties concerning the instant motion. (Dkt. #54-56, 59-60).

## DISCUSSION

**A.    Applicable Law**

A prisoner in federal custody may seek to have his sentence vacated, set aside, or corrected on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the [trial] court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).  However, the grounds for such a collateral attack under Section 2255 are much more limited than those available on a direct appeal. *See United States* v. *Addonizio*, 442 U.S. 178, 185 (1979).  Relief may lie "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States* v. *Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill* v. *United States*, 368 U.S. 424, 428 (1962)); *accord Cuoco* v. *United States*, 208 F.3d 27, 30 (2d Cir. 2000).

---

[2]    The Court extends its appreciation to Ms. Sacks for her detailed submissions on a truncated schedule.

In order to succeed on a claim of ineffective assistance of counsel, a movant must meet the two-pronged test established by *Strickland* v. *Washington*, 466 U.S. 668 (1984).  *First*, the movant must show that his counsel's representation was deficient, falling below the objective standard of reasonableness.  *See id.* at 687-88.  During this first step, the standard of review is highly deferential and includes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  "This presumption is overcome only if counsel failed to act reasonably considering all of the circumstances."  *United States* v. *Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020).

*Second*, the movant must establish that his counsel's errors resulted in actual prejudice.  *See Strickland*, 466 U.S. at 694.  A movant satisfies this second prong by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*; *see also United States* v. *Nolan*, 956 F.3d 71, 79 (2d Cir. 2020).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Garner* v. *Lee*, 908 F.3d 845, 862 (2d Cir. 2018).

A court is not required to address *Strickland*'s elements in any particular order.  *See Strickland*, 466 U.S. at 697.  If the movant does not successfully establish either the performance prong or the prejudice prong, the entire claim fails, and the remaining, unaddressed step becomes moot.  *See id.*

In ruling on a motion under 28 U.S.C. § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the

case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also, e.g., Pham* v. *United States*, 317 F.3d 178, 185 (2d Cir. 2003) (noting that 28 U.S.C. § 2255 does not permit summary dismissals of motions that present facially valid claims). That said, the filing of a Section 2255 motion does not automatically entitle the movant to a hearing, as, for example, in instances in which a movant's allegations are "vague, conclusory, or palpably incredible." *Machibroda* v. *United States*, 368 U.S. 487, 495 (1962). Rather, it is within the district court's discretion to determine the scope and nature of a hearing. *Chang* v. *United States*, 250 F.3d 79, 85-86 (2d Cir. 2001) ("It was, therefore, within the district court's discretion to choose a middle road [requiring a detailed affidavit from counsel] that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing.").

**B.   Analysis**

Mr. Barbee asserts that he received the ineffective assistance of counsel during the sentencing component of his VOSR proceeding. (Dkt. #54). Specifically, Mr. Barbee contends that both he and his sister advised Mr. Donaldson that Mr. Barbee was the primary caregiver for his mother, who has serious medical conditions, including lost sight and multiple sclerosis, and that arguments based on his status as caregiver could have served as the basis for a non-Guidelines sentence. (*Id.* at 2; *see also* Dkt. #54-3 (declaration of Mr.

10

Barbee); Dkt. #54-4 (declaration of sister, Surayya Parker)). Mr. Donaldson has submitted a sworn statement in response, in which he avers that he has no recollection of being advised that Mr. Barbee is his mother's primary caregiver, despite numerous conversations with Mr. Barbee and his sister. (Dkt. #56). Mr. Barbee then changes tack in reply, suggesting that Mr. Donaldson was ineffective in failing to inquire (and then inform the Court) about Ms. Jones's conditions and her consequent dependence on Mr. Barbee. (Dkt. #60).

There are reasons to doubt Mr. Barbee's assertion that he and other family members advised Mr. Donaldson of Mr. Barbee's mother's various medical issues and the criticality of his role as caretaker. To begin, the Court has reviewed the transcripts of each of the VOSR proceedings, and Mr. Barbee's mother is mentioned in none of them. Even at his sentencing, when Mr. Barbee specifically thanked and apologized to his family for his conduct, Mr. Barbee made no mention of his mother, much less a plea for leniency based on her need for him as a caretaker. Mr. Barbee also did not protest Mr. Donaldson's request for a 12-month sentence, which would have had the same practical effect on his caregiving abilities as a 24-month sentence. And the Court finds curious Mr. Barbee's current strategy of not challenging Mr. Donaldson's recollection that Ms. Jones was not discussed, but rather declaiming former counsel for not taking the initiative to inquire about Mr. Barbee's family situation; had the situation been as grave as Mr. Barbee now

11

claims, the Court cannot imagine that Mr. Barbee would not have volunteered the information at some point, either to counsel or to the Court.

But rather than focus on the issue of ineffectiveness, the Court resolves this motion on the issue of prejudice.  Even had the Court been made aware of the seriousness of Mr. Barbee's mother's medical conditions or her reliance on him for caretaking, it would have imposed the same sentence.  After all, Mr. Barbee had invoked his mother at his original sentencing before Judge Reiss, and had obtained a downward variance in part based on his family circumstances.  In response to this beneficence, Mr. Barbee breached the trust reposed in him by Judge Reiss, engaging in serious violations of his conditions of supervised release, beginning and ending with arrests for driving while intoxicated and reaching a crescendo in July 2020 with his armed robbery of a cellphone store.  Having used his mother once successfully to obtain leniency at sentencing, Mr. Barbee would not be successful a second time.  This Court gave extensive consideration before imposing the 24-month sentence on Mr. Barbee, and it would not have imposed a different sentence had it known of his mother's medical history and needs.  As such, even were the Court to assume that Mr. Donaldson was made aware of — or should have been aware of — Mr. Barbee's mother's conditions, there was no prejudice because the sentence would have been the same.

## CONCLUSION

For the reasons set forth above, the Court DENIES Mr. Barbee's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Because Mr. Barbee has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c). The Court further certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal from this Opinion and Order. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

Mr. Barbee is directed to report to his designated facility on **March 21, 2023**, before 2:00 p.m. The Government is directed to transmit a copy of this Opinion and Order to the relevant BOP personnel.

SO ORDERED.

Dated: March 6, 2023
       New York, New York

                                              KATHERINE POLK FAILLA
                                              United States District Judge